Alicia Funkhouser, AZ Bar No. 022746
**ELY, BETTINI, ULMAN & ROSENBLATT**
3200 North Central Avenue, Ste. 1930
Phoenix, Arizona 85012
(602) 230-2144
afunkhouser@eburlaw.com

*Attorney for Plaintiff Thompson*

### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

### (PHOENIX DIVISION)

| | |
|---|---|
| Mary Thompson, )<br><br>        Plaintiff, )<br> )<br>vs. )<br> )<br>Isagenix International, LLC & Isagenix )<br>Worldwide, Inc. )<br> )<br>        Defendants. )<br> )<br>_____ | **NO.**<br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

1.    Plaintiff Mary Thompson brings this action on behalf of herself and all others similarly situated against Defendant Isagenix International, LLC and Defendant Isagenix Worldwide, Inc. (collectively, "Isagenix") based upon the following allegations:

### PRELIMINARY STATEMENT

2.    Isagenix is a multi-level marketing company that relies upon the generation of new customers to compensate executives. This case challenges Isagenix's practice of sending unsolicited text messages in violation of the Telephone

1

Consumer Protection Act of 1991, as amended (collectively, with related regulations, the "TCPA"). As set out herein, Plaintiff believes that to generate new leads and customers Isagenix, or agents acting on Isagenix's behalf, have engaged in a widespread marketing campaign that relies upon unlawful TCPA violations.

3.    The TCPA prohibits any person from calling a cellular telephone number, using an automatic telephone dialing system (ATDS), without the recipient's prior express consent. 47 U.S.C. § 227 (b)(1)(A). A text message through short messaging service (SMS) qualifies as a call under this provision. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009).

4.    Isagenix, or someone on Isagenix's behalf, has sent Plaintiff messages by text message through an ATDS in violation of the TCPA.  Upon information and belief, these text messages are part of a much larger unlawful advertising campaign carried out by Isagenix, and Plaintiff brings lawsuit on behalf of all those similarly situated.

5.    As recognized by Congress and the Ninth Circuit, unsolicited text messages cause tangible harm to recipients such as Plaintiff and members of the putative class, including messaging charges.  TCPA violations improperly shift the costs of advertising from the sender to the recipient. Additionally, the Ninth Circuit has found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (*quoting Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

6.    Thus, to remedy this harm and to serve the public interest, Congress mandated a private right of action with statutory damages of $500 per violation, rising

to $1500 per violation for willful or knowing violations. Plaintiff believes and alleges that Isagenix's violations here were willful and knowing.

## PARTIES

7.    Plaintiff Mary Thompson is a natural person who, at all times relevant, resided in Alabama. She received unsolicited text messages from Isagenix, or someone acting on Isagenix's behalf, on a cell phone maintained by and paid for by her on multiple occasions during the statute of limitations.

8.    Defendant Isagenix International, LLC is an Arizona limited liability company with its principal place of business in Gilbert, Arizona. Its agent for service of process is CT Corporation System, 3800 N. Central Ave, Suite 460, Phoenix, AZ 85012. Isagenix offers supplements for sale in a multi-level marketing structure.

9.    Defendant Isagenix Worldwide, Inc. is a Delaware Corporation with its principal place of business in Gilbert, Arizona. Its agent for service of process is CT Corporation System, 3800 N. Central Ave, Suite 460, Phoenix, AZ 85012. Isagenix offers supplements for sale in a multi-level marketing structure.

10.    Defendants operate as a single organization with regard to the conduct at issue in this lawsuit. Defendants share management structure and financial accounting and any legal distinction between Defendants is a fiction designed to limit liability. Defendants worked in concert to engage in the conduct alleged to have occurred in this case. Defendants are responsible, either directly or indirectly, for the conduct at issue in this matter.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

12.    This Court has personal jurisdiction over Isagenix International, LLC because it is headquartered in this District, has transacted business in this judicial

district, has made contacts in this judicial district, and has committed unlawful acts within this judicial district.

13.    This Court has personal jurisdiction over Isagenix Worldwide, Inc. because it is headquartered in this District, has transacted business in this judicial district, has made contacts in this judicial district, and has committed unlawful acts within this judicial district.

14.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Isagenix resides in this District.

## CLASS ACTION ALLEGATIONS

15.    Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3) and proposes the following class:

> All persons who (1) from December 6, 2014 through the date of class certification, (2) were sent one or more SMS or MMS text messages regarding Isagenix products or services from Isagenix or anyone on Isagenix's behalf through the use of an Automated Telephone Dialing System and (3) for which Isagenix did not have prior express consent or invitation.

16.    Excluded from the proposed class are Defendants, any entity which has a controlling interest in Defendants, any agents, employees, officers and directors of Defendants, any person currently in bankruptcy, any person whose obligations have been discharged in bankruptcy, and any governmental agency, entity, or judicial officer which presides over this case;

17.    Plaintiff maintains the right to create additional subclasses or classes, if necessary, and to revise these definitions to maintain a cohesive class that does not require individual inquiry to determine liability.

I.    **Predominance of Common Questions of Law and Fact**

18.    There are questions of law and fact common to the classes.  These common questions of law and fact predominate over any questions affecting only individual members of the class.  Such common questions include, but are not limited to, the following:

a.  Whether Isagenix or someone on behalf of Isagenix made non-emergency calls to Plaintiff's and class members' cell phones

b.  The manner and method Isagenix or someone on Isagenix behalf used to compile or obtain phone numbers to which they sent text messages;

c.  Whether Isagenix or someone on Isagenix's behalf utilized an Automatic Telephone Dialing System (ATDS);

d.  Whether Isagenix acted knowingly or willfully, and whether treble damages are appropriate;

e.  Whether Isagenix or someone on Isagenix's behalf continue to violate the TCPA through sending unsolicited text messages and should be enjoined from doing so;

f.  Whether Isagenix can bear its burden to show that it obtained the express prior written consent of Plaintiff and the class members.

## II.     Typicality and Numerosity

19.     The claims of the named Plaintiff are typical of the claims of the putative classes in that they arise from the same conduct and violations and rely on the same facts and legal theories. The exact number of class members is unknown to Plaintiff at this time, but is more than one hundred, and such information will be ascertained through appropriate discovery.

## III.    Adequate Representation

20.     Plaintiff will fairly and adequately protect the interests of the members of the classes and have no interest antagonistic to those of other class members. Plaintiff has retained class counsel competent to prosecute class actions and such class counsel are financially able to represent the classes.

## IV.    Superiority

21.     The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable.  The interests of judicial economy favor adjudicating the claims for the Plaintiff classes rather than on an individual basis.  The class action mechanism provides the benefit of comity of adjudication, economies of scale, and comprehensive supervision by a single court.  Without class treatment, the violations alleged herein may effectively have no remedy.

## FACTUAL ALLEGATIONS

22.     On multiple occasions during the statute of limitations, including to Plaintiff on October 23, 2018, and October 25, 2018, Isagenix or someone on

Isagenix's behalf transmitted by text message to Plaintiff and class members. Plaintiff and other class members received these messages on their cell phones.

23.     On information and belief, these messages were sent through an ATDS. An ATDS is a system that has the capacity to dial numbers without human intervention. The generic and impersonal nature of these text messages demonstrate that Isagenix or someone on Isagenix's behalf utilized an ATDS in sending these messages. *See Kramer v. Autobytel, Inc.*, 759 F.Supp.2d 1165 (N.D. Cal. Dec 29, 2010) (finding that pleading that the messages were impersonal and that there was no other reason for contact was sufficient to state a TCPA claim); *Robbins v. Coca-Cola-Company*, No. 13-CV-132-IEG, 2013 WL 2252646 at *3 (finding that sending mass text messages plausibly states a claim that an ATDS was used).

24.     The texts messages were sent by, or on behalf of, Isagenix. They bear Isagenix's name, their products, and links to their website.

25.     The text messages are telemarketing under the TCPA. They are initiations of telephonic contact "for the purpose of encouraging the purchase . . . of . . . goods or services." 47 C.F.R. § 64.1200(f)(12). They all, in one way or another, encourage Plaintiff and putative class members to purchase Isagenix products.

26.     Even if a contact to a cell phone through an ATDS is not telemarketing, the entity making the contact must still prove that have obtained the plaintiff's prior express written consent to avoid liability under the TCPA. Plaintiff did not give Isagenix her express written consent to receive these text messages in the meaning of the TCPA as interpreted by the Ninth Circuit; Nor, upon information and belief, did other putative class members. The nature and manner in which they were sent indicates that Isagenix's text messages were part of an illegal advertising campaign.

27.     The nature of these text messages, and Isagenix's conduct, indicates that Isagenix has acted knowingly and willfully in violating the TCPA. Isagenix knew it

did not have prior express written consent to send these text messages and knew or should have known that the equipment they used was an ATDS. Indeed, based upon belief and investigation, as part of its marketing campaign, Isagenix utilized a third party contractor to send out these text messages through an ATDS.

28.    Plaintiff, and each putative class member, were harmed by Isagenix's unlawful text messages.   Under Ninth Circuit precedent, Isagenix have damaged plaintiffs by running afoul of established Congressional mandates. Additionally, their carriers counted these messages in their text and data plans, resulting in charges. These damages were real, tangible, and concrete.

## FIRST CAUSE OF ACTION

### Telephone Consumer Protection Act, 47 U.S.C. § 227

29.    All allegations and paragraphs in this complaint are incorporated by reference.

30.    This cause of action is brought on behalf of a class of similarly situated persons.

31.    The TCPA renders unlawful telephone calls or text messages (other than a call made to for emergency purposes) to a cell phone through an ATDS for which the defendant has not received prior express written consent. 47 U.S.C. § 227(b)(1)(A).

32.    The TCPA provides a private right of action:

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.

33.     Plaintiff and each member of the putative class received unsolicited text messages sent by, or on behalf of, Isagenix through an ATDS. These text messages were received on cell phones owned or maintained by Plaintiff and each member of the putative class.

34.     Isagenix did not have prior express permission or invitation to send these text messages.

35.     Plaintiff and each member of the putative class suffered damages as a result of the unsolicited text messages in the form of wireless charges, and in the form of invading their right of privacy as prescribed by Congress and interpreted by the Ninth Circuit.

36.     Isagenix violated the TCPA willfully or knowingly as outlined above, entitling Plaintiff and class members to treble damages for each violation.

## <u>REQUEST FOR JUDGMENT</u>

Plaintiff asks for judgment against Defendants in her and the putative class's favor, as follows:

1. For an order certifying this action as a class action;

2. For statutory damages in the amount of $500 per violation;

3. For trebled statutory damages in the amount of $1500 per violation;

4. For actual damages;

5. For an injunction prohibiting Defendants or anyone on their behalf from further transmission of unsolicited text message advertisements; and

6. For such other relief as the Court or jury deems just and proper

Plaintiff requests a trial by jury.

**DATED** this 10th day of December, 2018.

ELY, BETTINI, ULMAN,
ROSENBLATT & OZER

<u>/s/Alicia Funkhouser</u>
Alicia Funkhouser
*Attorney for Plaintiff*