**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Thompson,<br><br>          Plaintiff,<br><br>vs.<br><br>Isagenix International, LLC, et al.,<br><br>          Defendants. | No. CV-18-04599-PHX-SPL<br><br>**ORDER** |

On December 11, 2018, Mary Thompson ("Plaintiff") filed a class action complaint against Defendants Isagenix International, LLC, an Arizona limited liability company, and Isagenix Worldwide, Inc. a Delaware corporation (together, "Defendants") alleging violations of the Telephone Consumer Protection Act of 1991, as amended (the "TCPA").[1] On February 11, 2019, Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), and the Court denied the motion. (Docs. 17, 21) On September 4, 2019, Defendants filed a motion to dismiss, or in the alternative, to stay, and to Compel Arbitration (the "Motion to Dismiss and Compel"). (Doc. 26) Plaintiff filed a motion for leave to supplement her response to the Motion to Dismiss and Compel (the "Supplemental Motion"). (Doc. 44) Finally, the parties have filed both a joint statement of discovery dispute (Doc. 51) and a joint motion and stipulation for entry of protective order regarding confidential information.

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

(Doc. 55) The motions are fully briefed and the Court ruling on all pending matters is as follows.

**I.     Legal Standard**

Under the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d 1126, 1130 (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991)); *see Simula*, 175 F.3d at 720 (stating that "the district court can determine only whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms") (citing *Howard Elec. & Mech. v. Briscoe Co.*, 754 F.2d 847, 849 (9th Cir. 1985)). The party seeking to avoid arbitration bears the burden of demonstrating the arbitration agreement is invalid or does not include the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

In *Buckeye Check Cashing, Inc. v. Cardegna*, the United States Supreme Court recognized that challenges to arbitration agreements fall into two categories: (1) those "challeng[ing] specifically the validity of the agreement to arbitrate;" and (2) those "challeng[ing] the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." 546 U.S. 440, 444 (2006). The Court held that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445. The complaint in *Buckeye* did not contain claims that the arbitration provision alone was void and unenforceable, but rather alleged that the arbitration provision was unenforceable because it was contained in an illegal usurious contract which was void *ab initio*. *Id.* The Court concluded that "because respondents challenge the Agreement, but not

specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract." *Id.* at 445–46. Thus, the Supreme Court in *Buckeye* held that the claim that the contract as a whole, including the arbitration provision, was rendered void *ab initio* by the usurious finance charges, was for the arbitrator to decide. *Id.* at 445–46.

The en banc Ninth Circuit clarified in 2006 that it follows the position of the Supreme Court on the issue. *See Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1263–64 (9th Cir. 2006) (en banc) ("We review this case en banc to clarify, as the Supreme Court has recently reiterated, that when the crux of the complaint challenges the validity or enforceability of the agreement containing the arbitration provision, then the question of whether the agreement, as a whole, is unconscionable must be referred to the arbitrator." (citing *Buckeye*, 546 U.S. 440; *Prima Paint Corp. v. Flood & Conklin Mfg Co.*, 388 U.S. 395, 403–04 (1967))). The Ninth Circuit then reviewed decisions of sister circuits and found that they were all, with one exception, consistent with its view to "examine the nature of claims to determine whether they are arbitrable." *Id.* at 1271 (reviewing cases from the First, Second, Third, Fifth, Sixth, Eighth, and Eleventh circuits) Additionally, other circuits "[held] that, where the causes of action or claims within a complaint are, in essence, an effort to invalidate the entire contract, then the federal court will send the dispute to arbitration" and also that "where, as [in *Nagrampa*], there are separate and independent claims specifically challenging enforcement of the arbitration provision, then the federal court will proceed to consider the challenge to arbitrability of the dispute." *Id.* (only the Eleventh circuit appears to hold differently)

Notably, some circuits have not limited themselves to causes of action in the complaint but have also analyzed claims directed at the validity of arbitration clauses contained in responses to motions to dismiss and compel arbitration under the same standard. *See, e.g.*, *Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260 (5th Cir. 2004) (holding that a claim that the arbitration agreement itself was fraudulently induced raised in a response to a motion to compel arbitration was properly considered by the District Court); *Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483 (6th Cir.

2001) (holding that various claims attacking the enforceability of the arbitration agreement itself raised for the first time in response to a motion to compel arbitration needed to be reviewed by the District Court and not an arbitrator). *But see Madol v. Dan Nelson Automotive Group*, 372 F.3d 997 (8th Cir. 2004) (holding that claims that transactions as a whole were unconscionable raised for the first time in response to motion to compel should be resolved by an arbitrator because they were not claims directly attacking the arbitration agreement in and of itself). The district court also has the discretion under federal arbitration law to sever the unconscionable arbitration provision and enforce the remainder of the contract. *Buckeye*, 546 U.S. at 445.

**II. Analysis**

Here, on the one hand, the Complaint clearly did not contain any cause of action or claim that the arbitration provision was invalid or that the P&Ps themselves were invalid. (Doc. 1) Indeed, the only cause of action in the Complaint is that Defendants violated the TCPA by sending messages without obtaining the prior consent of Plaintiff and similarly situated persons. (Doc. 1 at 8–9)

On the other hand, in her response to the Motion, Plaintiff raises three reasons why she should not be compelled to arbitrate: (1) there was no mutual assent to the P&Ps, which include the arbitration clause; (2) even if the clause was applicable, it does not reach the TCPA claims because the P&Ps had expired years before the alleged violations and the TCPA claims do not arise out of or relate to the P&Ps; and (3) Defendants have not provided a sufficient factual record to support the Motion.[2] (Doc. 39 at 3) The first and second arguments track the Court's mandated standard of review on a motion to compel arbitration: determine whether there is a valid arbitration agreement, and if so, whether it covers the claims at issue. *Chiron Corp.*, 207 F.3d at 1130. The first inquiry must be resolved under

---

[2] Plaintiff did not raise any argument that the arbitration clause is invalid or unconscionable although her argument that it is buried in the P&Ps and does not provide sufficient notice to Plaintiff could be construed as an argument of procedural unconscionability. However, the Court will not presume arguments by the parties and considers that Plaintiff only alleges lack of assent and not that there is anything wrong with the arbitration clause or the P&Ps substantively.

traditional state law contract principles. *Doctors' Associates, Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996); *Cape Flattery, Ltd. V. Titan Maritime, LLC*, 647 F.3d 914, 920 (9th Cir. 2011). The second inquiry, the "issue of arbitrability", is one of general plain meaning interpretation.

**A. Plaintiff's Motion for Leave to Supplement her Response to Motion to Compel**

Plaintiff filed a motion for leave to supplement her response in opposition to defendants' motion to dismiss and compel arbitration based on the deposition of Ms. Mills, the Defendants' employee who enrolled Plaintiff in 2013. (Doc. 44) The Court examines this motion first to properly lay out the scope of evidence it considered in ruling on the Motion to Dismiss and Compel. For the reasons stated below, the Court will deny Plaintiff's motion for leave to supplement her response.

The Court finds that Plaintiff's motion is substantively an attempt at a sur-reply and at adding arguments which Plaintiff should have raised in her response to Defendants' Motion to Dismiss and Compel. Indeed, Plaintiff bases her motion on the fact that she took Ms. Mills's deposition and argues that it is, and reveals, new evidence relevant to the Court's ruling on the Motion to Dismiss and Compel. (Doc. 44 at 1–2) After reviewing the content of the proposed supplemental response, the Court disagrees.

First, the deposition testimony does not offer new relevant evidence for the Court regarding Ms. Mills's declaration. (Doc. 29) Plaintiff also appears to stretch and mischaracterize some of Ms. Mills's statement during her deposition. Plaintiff alleges that Ms. Mills testified that Plaintiff never gave Ms. Mills authority to consent to the P&Ps on Plaintiff's behalf. (Doc. 45 at 2) This is not what Ms. Mills stated: she stated that "after they have given me all of their documentation, all of the authority to do what – I signed them up. They told me exactly what they wanted." (Doc. 45, Ex. A at 24:1-23) She added that she sent a follow up email with the details of what she did so that no one would question what she did for them. (Doc. 45 Ex. A, at 24:1-23) Furthermore, Ms. Mills never stated that she had never provided the P&Ps to any client, which is what Plaintiff claims in her motion. Ms. Mills stated that she did not have any recollection or did not recall whether she provided

the P&Ps. (Doc. 45, Ex. A at 35:12-21; 36:2-14; 40:18-41:3) She also testified that she did not recall whether she had ever seen the arbitration agreement before her deposition, which is not the same as affirmatively stating she has never seen it, like Plaintiff claims. (Doc. 45, Ex. A at 40:2-41:3) Ms. Mills also confirmed that she would have checked the box agreeing to the P&Ps when enrolling Plaintiff. (Doc. 45, Ex. A at 30:16-20; 32:7-14) In her declaration, Ms. Mills stated that she was one of Defendants' Associates and after conversing with Plaintiff, enrolled Plaintiff in the Defendants' program in 2013 based on personal and credit card information provided by Plaintiff. (Doc. 29 at 2)

The second and third reasons for Plaintiff's motion are easily disposed of. Ms. Mills's testimony on her personal experience with subsequent orders of Defendant's products after the initial enrollment is not relevant to Plaintiff's own actions and consent to the P&Ps. This argument seems to be added because, in her response to Defendants' Motion to Dismiss and Compel, Plaintiff completely failed to address the effect Plaintiff's subsequent orders would have on consent. Even if the Court considered it, and it did not in ruling on the Motion, Ms. Mills's testimony undermines Plaintiff's position because she testified that her understanding and recollection were that she had to agree to the P&Ps each time she placed a reorder, which would suggest it was the same for Plaintiff when she reordered. (Doc. 45, Ex. A at 100:3-101:3) Finally, Ms. Mills is not qualified as an expert and her testimony is irrelevant and not admissible on the issues of the scope of the arbitration clause and whether it survives termination of the P&Ps. (Doc. 45 at 5–7) Accordingly, Plaintiff's motion for leave to supplement her response to Defendants' motion to dismiss and compel (Doc. 45) is denied.

**B. Mutual Assent**

Plaintiff argues that she did not consent to the P&Ps, including the arbitration clause, because she was not presented with those when Ms. Mills enrolled her into the Defendants' program in 2013. (Doc. 39 at 5–7) This may or may not be true but Plaintiff has completely failed to address Defendants' argument that by manually placing two orders after she was enrolled, Plaintiff agreed to be bound by the P&Ps. (Docs. 26 at 4–5; 43 at 4–6) Defendants

provided some evidence that each order required consent to the P&Ps. (Doc. 27 at ¶ 12) Although they did not provide actual screenshot of the "place order" page which was used when Plaintiff placed her manual orders in 2015, the declaration is a piece of evidence and is one done under penalty of perjury. Plaintiff has not argued against that evidence or offered any evidence to the contrary.[3] The Court will not manufacture arguments for Plaintiff regarding her lack of consent through the orders she placed. It is a well-settled principle that by failing to address arguments in an opposition, a party effectively concedes a claim. *See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005); see also *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (where opposition to a motion to dismiss failed to address arguments in the motion to dismiss, the plaintiff effectively abandoned the claim to relief). Accordingly, the Court finds that Plaintiff waived any argument that she did not consent to the P&Ps when placing two orders through Defendants' system.

The last argument Plaintiff raises regarding the issue of consent is that the arbitration provision is buried in the P&Ps and no one, her or other members of the putative class, could be found to be on notice of the obligation to arbitrate. (Doc. 39 at 9) The Court notes that Plaintiff argues that the P&Ps is a 45-page document in electronic form. (Doc. 39 at 9) Plaintiff however cites to Exhibit 6 of Ms. Valenzuela's declaration, which is the P&Ps in place from March 27, 2017 to this day. (Doc. 27-6) Defendants' offered into evidence the version of the P&Ps which was in effect between September 1, 2013 and March 27, 2017 as Exhibit 5 to Ms. Valenzuela's declaration. (Doc. 27-5) This is the relevant document for the Court to consider as the more recent version of the P&Ps, the 2017 version, is completely irrelevant to Plaintiff's case as it was not applicable during her membership in Defendants' system. Turning to Exhibit 5, the Court finds that the arbitration clause is sufficiently

---

[3] As discussed previously, Plaintiff attempted to address the issue in her supplemental response but the Court will not consider that evidence. Even so, the Court noted that Ms. Mills's testimony shows that she remembered having to consent to the P&Ps each time she placed an order, which supports Ms. Valenzuela's declaration and supports Defendants' position that Plaintiff consented to the P&Ps and arbitration with each manual order she placed following her enrollment.

conspicuous to provide adequate notice to Plaintiff.

Indeed, the P&Ps themselves are contained within 7 pages of Exhibit 5, the rest being introductory pages, code of ethics, and 2012 Earnings Disclosure by the Defendants. (Doc. 27-5) On the sixth page of the P&Ps, a green colored heading entitled "9. General Provisions" appears in the middle of the page and left column. (Doc. 27-5 at 10) Each sub-section of the P&Ps bears a bolded heading with a number and briefly describing what the provision covers. (Doc. 27-5 at 5–11) The arbitration clause, sub-section 9.11, follows such formatting: the section heading, "9.11 Arbitration and Governing Law" is bolded and the heading itself alerts the reader to the fact that an arbitration matter is addressed below. (Doc. 27-5 at 10) Its paragraphs contain sufficient white space to make the clause readable and it is not overly lengthy, consisting of one longer and three shorter paragraphs. (Doc. 27-5 at 10–11)

Additionally, the Court notes that Plaintiff is an Alabama real estate attorney. (Docs. 26-1; 28; 28-1; 29 at 1) Defendants' Motion is directed at Plaintiff's case alone and the Court finds it hard to believe that Plaintiff could not understand that she entered into binding terms, likely to contain an arbitration provision. Furthermore, the evidence in the record suggests that when Plaintiff manually ordered products, she was presented with a confirmation page alerting her to the fact that by placing the order, she was consenting to the P&Ps. (Doc. 27 at ¶ 12) Plaintiff is a highly educated professional who surely has dealt with large contracts before, contracts which likely contained arbitration provisions. Accordingly, the Court finds that the arbitration clause was not so hidden in the P&Ps so as not to give adequate notice to Plaintiff that she agreed to such arbitration clause.

**C. Scope of Arbitration Clause**

Having found that Plaintiff consented to arbitration, the Court must determine the scope of the arbitration clause and whether Plaintiff's TCPA claim is covered by such clause. Plaintiff makes two arguments against the application of the clause: (1) that the clause expired when the P&Ps and Plaintiff's account were not renewed in 2016, and (2) that substantively, the language of the clause does not cover TCPA claims. The Court

addresses each argument in turn.

**1. Expiration of the P&Ps and the Arbitration Clause**

The Court finds Plaintiff's argument that the arbitration clause terminated unavailing. It is true that Plaintiff was not part of Defendants' program when she received the text messages which form the basis of her TCPA claim: the last renewal date on her account was in 2016, and she received the text messages in 2018. (Doc. 39 at 10) Plaintiff seems to completely ignore the fact that the P&Ps contain a provision specifically addressing the survival of the arbitration clause. Section 9.10 of the P&Ps, entitled "Survival of Terms", is directly above the arbitration clause, in the same format the Court already discussed. (Doc. 27-5 at 10) It states that "[you] understand and agree that each of the provisions of these Policies and Procedures relating to . . . arbitration, and other provisions as expressly stated therein will survive the termination of your relationship with Isagenix." (Doc. 27-5 at 10) Plaintiff never mentioned that provision in her response to the Motion.[4] Accordingly, the Court finds that the plain language of Section 9.10 of the P&Ps makes it clear that the arbitration clause survived the termination of the relationship between Plaintiff and Defendants.

**2. Claims Covered by the Plain Language of the Arbitration Clause**

The Court finds Plaintiff's argument that TCPA claims are not covered by the language of the arbitration clause unavailing as well. To determine the scope of the arbitration provision, the Court turns to its plain language. The clause states that "[a]ny controversy or claim arising out of, or relating to, these [P&Ps] . . . or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules." (Doc. 27-5 at 10) The clause further added that "[i] an associate . . . files a claim or counterclaim against Isagenix, he or she may only do so on an

---

[4] Plaintiff attempted to argue about the survival provision through Ms. Mill's testimony as a basis for her motion for leave to file a supplemental response. The Court already excluded the evidence and the sur-reply, and specifically noted that, in any event, Ms. Mills could not testify as to a legal opinion on the termination of a contract and survival of terms.

9

individual basis and not with any other individual or as part of a class action." (Doc. 27-5 at 10) Plaintiff correctly focuses on the "arising out of" and "relating to" language of the clause in arguing that TCPA claims are not within the scope of the clause. Nevertheless, one crucial fact Plaintiff left out of her argument and analysis is the fact that section 9.4 of the P&Ps, entitled "Consent to Receive Emails, Text Messages, and other Communications", which appears directly to the left of the arbitration clause, addresses her consent to receive text message from Defendants. (Doc. 27-5 at 10) The Court will not rule on the merits issue of the case, as it is precluded from doing so under the standard of review of an arbitration clause, but the Court must decide the scope of such clause. One of the elements of Plaintiff's TCPA claims is whether she gave consent to Defendants to send her text messages. The fact that a provision in the P&Ps directly addresses this issue and that the arbitration clause applies to any claim "arising out of" or "relating to" the P&Ps leads to only one conclusion: that the issue of consent to receive text message is covered by the arbitration clause of the P&Ps. Plaintiff cites cases in support of her argument where courts have concluded that TCPA claims should not be sent to arbitration which are easily distinguishable from the case at hand. Indeed, in those cases, either the terms of use or terms and conditions which contained an arbitration provision did not contain any clause relating to the issue of consent to receive text messages or the arbitration clause and the consent clause were in two separate agreements. *See Esparza v. SmartPayLeasing, Inc.*, 765 F. App'x 218 (9th Cir. 2019); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012). Here, the two provisions are in the same agreement and they are next to each other on the same page. (Doc. 27-5 at 10). Additionally, Plaintiff did not challenge the validity of the arbitration clause beyond her alleged lack of consent and the Court finds that the class waiver contained in the arbitration clause mandates that Plaintiff proceed to arbitration on an individual basis. Accordingly, the Court finds that Plaintiff's TCPA claim is within the scope of the arbitration clause and that Defendants' Motion should

be granted.[5]

**IT IS ORDERED** that Plaintiff's Motion for Leave to File Supplemental Response (Doc. 44) is **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss or in the Alternative, Stay, and To Compel Individual Arbitration (Doc. 26) is **granted in full**.

**IT IS FURTHER ORDERED**:

1. That the parties shall proceed to arbitration in accordance with the terms of the arbitration clause contained in Defendants' P&Ps; and
2. That Plaintiff shall proceed to arbitration on an individual basis as required by the class waiver contained in the same arbitration clause.

**IT IS FURTHER ORDERED** the parties' Joint Motion for Protective Order (Doc. 55) is **denied as moot**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall terminate this action and enter judgment accordingly.

Dated this 24th day of March, 2020.

Honorable Steven P. Logan
United States District Judge

---

[5] Because the Court finds that Plaintiff's TCPA claim must be individually arbitrated, the parties' joint notice of discovery dispute (Doc. 51) and joint motion for protective order (Doc. 55) are moot and the Court will not address them.